OPINION
Laughlin Scanlan, Inc., and its individual partners Eric Laughlin and Brian Scanlan (hereinafter collectively referred to as "Laughlin") appeal from a judgment of the Clark County Court of Common Pleas, which recalculated the amount that Laughlin owed to Wild-Fire, Inc. ("Wild-Fire") for electrical services pursuant to our remand inWild-Fire, Inc. v. Laughlin (Mar. 9, 2000), Clark App. No. 2000-CA-51, unreported ("Wild-Fire I").
Laughlin was the general contractor and Wild-Fire was the electrical subcontractor for the construction of a Holiday Inn Express in London, Ohio. Wild-Fire had prepared and submitted a bid of $81,910 on the project based on specifications provided by Laughlin. Both parties recognized that the design of the building was subject to change and that such changes would be handled through change orders. Pursuant to the contract, the change orders were supposed to be approved in writing before the work was performed but, in practice, Wild-Fire completed numerous additional tasks with only verbal authorization to do so. Wild-Fire ultimately submitted to Laughlin a list of twenty-three change orders for which it sought payment over and above the contract price. A dispute arose over these change orders which led to this litigation.
Wild-Fire claimed that it was owed a total of $48,132.73 for all of the change orders. The most significant dispute over the change orders focused on whether certain work had been covered by Wild-Fire's bid or had been added subsequent to the bid. Laughlin claimed that, based on the specifications that it had provided to potential contractors, the bid had included the installation of three electrical systems and two hot water heaters, while Wild-Fire claimed that only one electrical system had been covered by the bid. Two of the disputed change orders, totaling over $30,000, turned on this issue. Laughlin admitted that it had approved thirteen of the change orders, totaling $12,068. Regarding the other change orders, Laughlin did not dispute that the work had been done, but it asserted that Wild-Fire had not submitted sufficient documentation for Laughlin to obtain approval from the owner. At one point, Laughlin offered to settle the dispute for $16,733, which represented the cost of the thirteen undisputed change orders plus $4,165 to increase Wild-Fire's base bid to the price of the next lowest bidder who had included three electrical services and two hot water heaters, plus $500 for an additional hot water heater. Wild-Fire rejected this offer.
Wild-Fire sued Laughlin under the theories of breach of contract and quantum meruit. The trial court found that Wild-Fire's bid had been for three electrical services, not one, and found that Laughlin had not breached its contract with Wild-Fire. However, it awarded $16,733 for the remaining change orders based on quantum meruit. The trial court apparently arrived at this amount in reliance on Laughlin's earlier settlement offer.
Wild-Fire appealed from the trial court's judgment that there had been no breach of contract and from its calculation of damages. We affirmed the trial court's judgment insofar as it had excluded the cost of the two additional electrical services, but we noted that, notwithstanding Wild-Fire's request for findings of fact and conclusions of law, the trial court had not explained the calculation of its damage award. We stated:
 The only evidence presented at trial as to the value of the services rendered was Wild-Fire's invoices presented during [a Wild-Fire employee's] testimony. The $16,733.00 figure was only mentioned at trial as an amount that Mr. Laughlin had offered as a settlement at one time.
 Mr. Laughlin reached the $16,733.00 figure by adding the invoice prices for thirteen of the change orders, 12,068.00; plus the difference between Wild-Fire's bid and the next closest bidder who specified three electric services and two water heaters in its bid, $4,165.00; plus $500 for a third water heater. Mr. Laughlin's calculation provided no value for nearly ten extras or changes which had been provided and claimed as change orders. Additionally, Mr. Laughlin's calculation awarded in excess of $4,000 for the additional two electric services, which as discussed above should not be included in the calculation of the damages under a quantum meruit claim because the trial court found it to be included in the express contract. Therefore, we find that the trial court miscalculated the damages on the quantum meruit claim.
Wild-Fire I, supra. We remanded for the trial court to determine an amount that excluded all costs related to the additional electrical services which it had found to be included in the original bid and that addressed all of the disputed change orders.
On April 27, 2001, the trial court filed a judgment entry ordering Laughlin to pay Wild-Fire an additional $13,417.38. It is undisputed that, before that date, Laughlin had already paid Wild-Fire $16,733. Thus, the total amount of damages awarded by the trial court pursuant to our remand was $30,150.38.
On the list of change orders submitted to the trial court, items one and two were the installation of hot waters heaters and of two additional electrical systems. The amount awarded by the trial court on remand included $12,242.73 for hot water heaters. Laughlin, however, has consistently maintained that the hot water heaters and the electrical support necessary to operate them were included in the original bid and thus could not be added to the contract price through a change order. Throughout the hearing conducted by the trial court in May 2000, Laughlin's representatives maintained that they had refused to negotiate with Wild-Fire about items one and two for this reason. More importantly, no evidence was presented from which the trial court could have differentiated between the electrical systems and water heaters in terms of their inclusion in the contract; these items were discussed collectively.
In its June 15, 2000 judgment entry, the trial court seemed to accept Laughlin's argument that the disputed items had been covered by the bid, although it did not address the hot water heaters specifically. Then, without explanation, the trial court included the hot water heaters in the amount owed to Wild-Fire when it entered judgment on remand. This issue is further complicated by the fact that our prior opinion and Laughlin's proposed settlement offer to Wild-Fire, which was introduced into the record as an exhibit, refer to the addition of a third hot water heater in the design specifications that apparently had not been called for in the bid documents.
The trial court's determination regarding the hot water heaters, including whether they were included in the original bid and how many, is unclear. It appears from the trial court's June 15, 2000 judgment entry that it did not intend to compensate Wild-Fire for the installation of the hot water heaters in quantum meruit because they had been included in the contract price. Moreover, the court did not comment specifically upon the apparent addition of at least one hot water heater after the original contract was entered. Rather, the court included the total cost of the hot water heaters in its somewhat sketchy calculation of damages on remand. In this respect, the trial court erred. We will again remand this matter to the trial court for clarification of its damage award and modification of that award, if appropriate.
The assignment of error is sustained.
The judgment of the trial court will be reversed and the matter remanded for further proceedings.
BROGAN, J. and FAIN, J., concur.